# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**NORBERT A. SCHUELLER,**

　　　　Plaintiff,

　　vs.　　　　　　　　　　　　　　No. 1:11-CV-00955-MCA-LFG

**EXPERIAN INFORMATION
SOLUTIONS, INCORPORATED,
EQUIFAX INFORMATION
SERVICES, LLC, TRANS UNION,
LLC, WELLS FARGO & CO.,** *doing
business as* **WELLS FARGO BANK,
N.A.,** *doing business as* **WELLS
FARGO HOME MORTGAGE,**

　　　　Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendant Trans Union LLC's Motion for
Partial Dismissal* [Doc. 13] and *Wells Fargo's Motion to Dismiss Plaintiff's Complaint
Pursuant to Fed. R. Civ. P. 12(b)(6)* [Doc. 25].  Having considered the parties'
submissions, the relevant case law, and otherwise being fully advised in the premises, the
Court grants both motions.

## I.　　BACKGROUND

On or about July 22, 2010, Norbert A. Schueller (Plaintiff) filed for personal
Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of
New Mexico. [Doc. 1 at 10-11]  Plaintiff listed his home mortgage loan with Defendant
Wells Fargo Bank, N.A. ("Wells Fargo") in his Bankruptcy Petition.  Plaintiff also filed

"a reaffirmation [Chapter 7 Individual Debtor's Statement of Intention] of that mortgage debt," which Plaintiff contends "evidenced his intent not to have that debt discharged." [Doc. 1 at 11]  On December 5, 2011, the United States Bankruptcy Court granted Plaintiff's request for a discharge "under section 727 of title 11 United States Code (the Bankruptcy Code." [Doc. 25-5 at 1]

On October 25, 2011, Plaintiff filed his *pro se Complaint for Damages & For Injunctive Relief* against Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"),[1] Trans Union, LLC ("Trans Union") and Wells Fargo.  [Doc. 1].  Plaintiff alleges that his mortgage loan debt was not discharged in bankruptcy and that he has continuously made payments on his home mortgage loan since July of 2010.  Despite this fact, Defendants have reported Plaintiff's home mortgage loan as closed and discharged in Chapter 7 bankruptcy.  Based on this alleged misrepresentation, Plaintiff's *Complaint* raises the following fifteen claims: (1) Experian willfully violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681(a)(4), (b); (2) Experian willfully violated the FCRA, Section 1681e (b); (3) Experian willfully violated the FCRA, Section 1681i (a)(1)(A); (4) Experian willfully violated the FCRA, Section 1681i (a)(2)(A); (5) Equifax willfully violated the FCRA, Section 1681 (a)(4), (b); (6) Equifax willfully violated the FCRA, Section 1681e (b); (7) Equifax willfully violated the FCRA, Section 1681i (a)(1)(A); (8) Equifax willfully violated the FCRA 1681i (a)(2)(A);

---

[1]On December 28, 2011, the Court granted Plaintiff's *Unopposed Motion for Dismissal with Prejudice of Complaint Against Defendant Equifax Information Services LLC*. [See Docs. 32 and 34].  Accordingly, Equifax is no longer a party to this case.

(9) Trans Union willfully violated the FCRA, Section 1681a(4), (b); (10) Trans Union willfully violated the FCRA, Section 1681e (b); (11) Trans Union willfully violated the FCRA, Section 1681i (a)(1)(A); (12) Trans Union willfully violated the FCRA, Section 1681i (a)(2)(A); (13) Wells Fargo willfully violated the FCRA, Section 1681s-2 (b)(1)(D); (14) defamation against all four Defendants for "making false statements with respect to plaintiff's home mortgage loan account at/with defendant Wells Fargo" [Doc. 1 at 48] and (15) conversion against Wells Fargo for accepting Plaintiff's mortgage payments. [Doc. 1]  In his prayer for relief, Plaintiff seeks compensatory damages, punitive damages, costs and fees including attorneys fees, if any, and injunctive relief requiring Defendants "to honestly and truthfully report all credit items concerning plaintiff's home mortgage loan account at/with defendant Wells Fargo." [Doc. 1-1 at 16].

On November 21, 2011, Trans Union filed *Defendant Trans Union LLC's Motion for Partial Dismissal* [Doc. 13].  Trans Union contends that Plaintiff's request for injunctive relief should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) "because a private plaintiff cannot seek equitable, declaratory or injunctive relief under the FCRA." [Doc. 13 at 1]  Trans Union further contends that Plaintiff's request for attorney's fees should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because "[a]s a *pro se* litigant, Plaintiff cannot recover attorney's fees under the FCRA." [Doc. 13 at 3]  Plaintiff responds that his request for injunctive relief is not based on the FCRA, but rather on his common law claim for defamation. [Doc. 26 at 5-7]  Plaintiff acknowledges that, as a *pro se* litigant he is not entitled to recover attorneys' fees, but explains that he included this

3

request for relief in his *Complaint* order to preserve his entitlement to such fees in case he hires an attorney at some point in the future.[2] [Doc. 26 at 7-8]

On December 5, 2011, Wells Fargo filed *Wells Fargo's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)*. [Doc. 25]  Wells Fargo contends that Plaintiff's FCRA and defamation claims should be dismissed because Wells Fargo accurately reported that Plaintiff's personal liability on his home mortgage loan had been discharged in Chapter 7 bankruptcy.  However, the Chapter 7 bankruptcy proceeding did not affect Wells Fargo's security interest in the mortgaged property. Wells Fargo contends that Plaintiff voluntarily paid his monthly mortgage in order to avoid foreclosure of that security interest and, therefore, Plaintiff's "conversion claim fails as a matter of law." [Doc. 25 at 9]  Plaintiff responds that Wells Fargo's motion to dismiss should be denied because Wells Fargo reported inaccurate and misleading information regarding Plaintiff's home mortgage loan.  Specifically, Plaintiff points out that the debt itself was not extinguished, the account was never closed, and Plaintiff has continued to make timely and accurate monthly mortgage payments. [Doc. 31]

## II.   STANDARD

Under Fed. R. Civ.P. 12(b)(6), a court may dismiss a complaint for "failure to state

---

[2]Plaintiff initially objected to Trans Union's motion for partial dismissal on the basis of Local Rule 7.1(a), which requires the movant to make a "determination whether a motion is opposed" and provides that "a motion that omits recitation of a good-faith request for concurrence may be summarily denied."  D.N.M.LR-Civ. 7.1(a) [See Doc. 26 at 2-4].  However, Plaintiff and Trans Union subsequently conferred in accordance with the Local Rule and Plaintiff thereafter withdrew his objection. [See Docs. 28 and 30 n.1]

a claim upon which relief can be granted." The sufficiency of a complaint is a question of law, and when considering and addressing a motion to dismiss pursuant to rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006). Further, in order to withstand a rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted) (Iqbal). If a plaintiff cannot nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed. Id. at 680.

In handing down Twombly, the United States Supreme Court invalidated the longstanding rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Conley standard has proved problematic over the years because it suggests that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). As a result, defendants may be forced to bear the burden and expense

of discovery before they are afforded a real opportunity to seek the dismissal of

groundless claims, while plaintiffs may use the burdensome discovery process as leverage

to induce otherwise unjustified settlement of such groundless claims.  See Twombly, 550

U.S. at 557-59.

A complaint is now subject to dismissal under the new standard if it does not

"possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550

U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)). In other words, "the mere metaphysical

possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded

claims is insufficient; the complaint must give the court reason to believe that *this*

plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge

at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

Two "working principles" underlie the Twombly standard. Iqbal, 556 U.S. at 678.

First, the tenet that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions.  Threadbare
recitals of the elements of a cause of action, supported by mere conclusory
statements, do not suffice. . . . Second, only a complaint that states a
plausible claim for relief survives a motion to dismiss.  Determining
whether a complaint states a plausible claim for relief will . . . be a context-
specific task that requires the reviewing court to draw on its judicial
experience and common sense.

Id. at 678-79 (internal citations omitted).  Thus, in order to evaluate a motion to dismiss,

the Court engages in a two-part inquiry by initially identifying those allegations that are

nothing more than legal conclusions and therefore "not entitled to the assumption of

truth" and then considering whether the factual allegations "plausibly suggest an

entitlement to relief." Id. at 681.  Accordingly, the Court begins by evaluating the elements of the pleaded cause of action, in order to determine whether the complaint states sufficient factual allegations to implicate a claim for relief.  See id. at 674.

    "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Thus, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Id.  However, it is not the "the proper function of the district court to assume the role of advocate for the pro se litigant." Id.  "The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Id.

## III.    DISCUSSION

### A.    _Defendant Trans Union LLC's Motion for Partial Dismissal_ [Doc. 13]

### 1.    _Injunctive Relief_

    Trans Union moves to dismiss Plaintiff's request for injunctive relief "because a private plaintiff cannot seek equitable, declaratory or injunctive relief under the FCRA." [Doc. 13 at 1] There appears to be a split of authority on the question of whether equitable, declaratory, or injunctive relief is available under the FCRA.  In Washington v. CSC Credit Services, Inc., 199 F.3d 263 (5th Cir. 2000), the Fifth Circuit Court of

Appeals noted that "[l]ower courts are split as to whether . . . the FCRA allows private litigants to maintain a claim for injunctive relief." Id. at 268. That Court examined the language of the FCRA, noting that the statute's civil liability provisions "expressly refer to damages and attorney fees without mentioning injunctive relief. See 15 U.S.C. §§ 1861n–1861o." Id. The Court further determined that "[t]his omission is significant because the Act elsewhere grants the power to obtain injunctive relief to the [Federal Trade Commission (FTC)]." Id.; see § 1861s(a); 15 U.S.C § 45(b). And, according to the Court, "the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC." Id.

However, in Beaudry v. Telecheck Services, Inc., 579 F.3d 702 (6th Cir. 2009), the Sixth Circuit Court of Appeals noted that the conclusion in Washington "is not free from doubt." Id. at 709. The Court observed "that a district court should start with the assumption that, in actions over which it has jurisdiction, it has authority to issue injunctive relief" and "absent 'the clearest command to the contrary from Congress' the plaintiff may seek injunctive relief." Id. (quoting Califano v. Yamasaki, 442 U.S. 682, 705 (1979)). Because resolution of this issue was not dispositive of the outcome of the case before it, the Beaudry Court "save[d] its resolution for another day." Id.

Despite this split of authority, I find that the vast majority of lower courts to have considered the issue follow the Washington court's reasoning and hold that injunctive

relief is not available to private plaintiffs under the FCRA.  See, e.g., Hamilton v.
DirecTV, Inc., 642 F. Supp. 2d 1304, 1305 (M.D. Ala. 2009) ("District courts in the
Eleventh Circuit have consistently held that equitable relief is not available to private
citizens under the FCRA."); Yasin v. Equifax Information Services, LLC, No. C-08-1234
MMC, 2008 WL 2782704, at *2 (N.D. Cal. July 16, 2008) (noting that "the
'overwhelming' majority of district courts, as well as the one circuit to have considered
the issue, have found Congress did not intend that consumers obtain equitable relief when
bringing an action under FCRA against a defendant other than the government").  The
lower courts in the Tenth Circuit are in accord with these authorities.  See, e.g., Stich v.
BAC Home Loans Servicing, LP, No. 10–cv–01106–CMA–MEH, 2011 WL 1135456, at
*10 (D. Colo. March 29, 2011); Birmingham v. Equifax, Inc., No. 2:06–cv–00702 BSJ,
2009 WL 194985, at *2 (D. Utah January 26, 2009); Greene v. Capital One Bank, No.
2:07-CV-687 TS, 2008 WL 1858882, at *4 (D. Utah April 23, 2008); Millett v. Ford
Motor Credit Co., No. 04-2450-CM, 2006 WL 1301160, at *4 (D. Kan. May 9, 2006);
Jarrett v. Bank of America, 421 F.Supp.2d 1350, 1353 (D. Kan. 2006); Owner-Operator
Independent Driver Ass'n, Inc. v. Usis Commercial Services, Inc., 410 F.Supp.2d 1005,
1008-09 (D.Colo. 2005).  I am persuaded by these authorities and conclude, therefore,
that injunctive relief is not available to Plaintiff under the FCRA.

Plaintiff appears to concede this issue, because he contends that he is not seeking
injunctive relief under the FCRA, but rather under the common law of defamation. [See
Doc. 26]  Trans Union responds that Plaintiff's request for common law injunctive relief

is preempted by the FCRA.  [Doc. 30 at 3]  Assuming without deciding that Plaintiff's

defamation claim is not preempted by the FCRA,[3] the Court nonetheless must determine

whether injunctive relief is available under the common law, even though it is not

available under the FCRA.

      The lower courts that have addressed this issue generally conclude that common

law injunctive relief is preempted by the FCRA.  As the United States District Court for

the Middle Division of Alabama explained:

> The FCRA preempts state law to the extent that the state law is inconsistent
> with the FCRA.  Because the FCRA vests the FTC exclusively with the
> right to seek injunctive relief, the court finds that a state law claim that
> grants a private litigant access to equitable relief would frustrate and
> conflict with the FCRA. . . . Allowing individuals [to seek injunctive relief]
> would undermine the discretion vested in the FTC.

Hamilton, 642 F.Supp.2d at 1306-07 (internal quotation marks and citation omitted); see

also Stich, 2011 WL 1135456, at *10 (concluding that common law injunctive relief is

barred by the FCRA); Poulson v. Trans Union, LLC, 370 F.Supp.2d 592, 593 (E.D.Tex.

---

[3]Section 1681h(e) provides as follows:
Except as provided in sections 1681n and 1681o of this title, no consumer
may bring any action or proceeding in the nature of defamation, invasion of
privacy, or negligence with respect to the reporting of information against
any consumer reporting agency, any user of information, or any person who
furnishes information to a consumer reporting agency, based on information
disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based
on information disclosed by a user of a consumer report to or for a
consumer against whom the user has taken adverse action, based in whole
or in part on the report except as to false information furnished with malice
or willful intent to injure such consumer.
Plaintiff's *Complaint* alleges, in relevant part, that Trans Union recklessly, maliciously,
oppressively, and in bad fath, defamed Plaintiff by reporting false information regarding
Plaintiff's home mortgage loan.  [Doc. 1 at 56]

2005) (same).  In accordance with these authorities, this Court holds that Plaintiff's claim

for injunctive relief is preempted by the FCRA.  Because it would be futile to permit

Plaintiff to amend his request for injunctive relief, it will be dismissed with prejudice.

See Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir.2006) ("[A]

dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule

12(b)(6) and granting leave to amend would be futile.").

2.    *Attorney's Fees*

      Trans Union moves to dismiss Plaintiff's request for attorney's fees, arguing that

Plaintiff is not entitled to attorney's fees because he is not represented by an attorney.

[Doc. 13 at 3]  Section 1681n(c) provides as follows:

> Upon a finding by the court that an unsuccessful pleading, motion, or other
> paper filed in connection with an action under this section was filed in bad
> faith or for purposes of harassment, the court shall award to the prevailing
> party attorney's fees reasonable in relation to the work expended in
> responding to the pleading, motion, or other paper.

Although Section 1681n(c) allows "a prevailing plaintiff to recover reasonable attorneys'

fees for violations of the FCRA" this provision does "not apply to pro se plaintiffs."

Baker v. Trans Union LLC, No. CV–10–8038–PCT–NVW, 2010 WL 2104622, at *10

(D. Ariz. May 25, 2010); see Morris v. Equifax Inform. Serv., LLC, No. H-04-423, 2005

WL 5976334, at *2 (S.D. Tex. January 19, 2005) (holding that the plaintiff "as a pro se

attorney litigant, is not entitled to attorney's fees under the FCRA"); Menton v. Experian

Corp., No. 02 Civ. 4687(NRB), 2003 WL 941388, at *3 n.7 (S.D.N.Y. March 6, 2003)

("While we do not believe that Mr. Menton has sought attorney's fees, we note that as an

11

attorney representing himself he would not be entitled to recover attorney's fees even if he were successful on his NYFCRA and FCRA claims."). Plaintiff is proceeding *pro se* he, therefore, is not eligible for an award of attorney's fees.

Plaintiff contends that Trans Union's motion to dismiss should be denied as premature, because he might retain an attorney at some point in the future. The Court disagrees. At this point in the litigation, there is no basis on which the Court could award attorney's fees to Plaintiff; Plaintiff is not represented by an attorney and Plaintiff has not alleged that Trans Union has filed an unsuccessful pleading or motion in this action in bad faith or for purposes of harassment. Plaintiff has failed to plead facts in support of an award of attorney's fees and, therefore, Defendant's partial motion to dismiss will be granted. Plaintiff's request for attorney's fees is hereby dismissed without prejudice.

B.      *Wells Fargo's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P.
        12(b)(6) [Doc. 25]*

Wells Fargo moves to dismiss Plaintiff's *Complaint*, contending that Plaintiff's FCRA and defamation claims fail as a matter of law because Wells Fargo accurately reported to Defendant credit reporting agencies that Plaintiff's personal liability on his home mortgage loan had been discharged in the Chapter 7 bankruptcy proceeding. Furthermore, Wells Fargo contends that Plaintiff's *Complaint* fails to state a claim for conversion because Plaintiff voluntarily made payments on his home mortgage loan in order to avoid foreclosure of Wells Fargo's security interest. In support of these contentions, Wells Fargo submitted various exhibits, including the underlying Note,

Mortgage, and documents filed in the Chapter 7 bankruptcy proceeding. [See Docs. 25-1 through 25-5]  As a preliminary matter, the Court must determine whether these exhibits are properly before the Court.

"Generally, the sufficiency of a complaint must rest on its contents alone." Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010).

> There are exceptions to this restriction on what the court can consider, but they are quite limited: (1) documents that the complaint incorporates by reference, (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice . . .

Id. (internal quotation marks and citations omitted).  "If a district court intends to rely on other evidence, it must convert the Rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties. See Fed. R. Civ .P. 12(d)." Id.

The Note and Mortgage are both referenced in Plaintiff's *Complaint*, are central to Plaintiff's FCRA, defamation, and conversion claims, and their authenticity is not in dispute.  Accordingly, the Court will consider these documents in ruling on Wells Fargo's motion to dismiss.  See County of Santa Fe, N.M. v. Public Service Co. of New Mexico, 311 F.3d 1031, 1045 (10th Cir. 2002) (considering a document that was not attached to the complaint in ruling on a motion to dismiss under Fed. Civ. R. P. 12(b)(6) because "it is a document referred to in the complaint and it is a document that is central to the plaintiff's claim whose authenticity is not in dispute").

"[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings

have a direct relation to matters at issue." Turner v. McGee, 681 F.3d 1215, 1217 n.2

(10th Cir. 2012) (internal quotation marks and citation omitted).  The Chapter 7

bankruptcy proceeding has a direct relation to Plaintiff's FCRA, defamation and

conversion claims and, therefore, the Court takes judicial notice of the documents filed in

that proceeding.  See In re Marsden, 99 Fed.Appx. 862, 863 n.1 (10th Cir. 2004) (taking

judicial notice of the Bankruptcy Court's docket in a related proceeding) (unpublished

opinion).

Having determined that Wells Fargo's exhibits are properly before the Court, the

Court next addresses the merits of Wells Fargo's motion to dismiss.  In Johnson v. Home

State Bank, 501 U.S. 78 (1991), the United States Supreme Court explained the impact

that a Chapter 7 bankruptcy proceeding has upon a debtor's mortgage loan:

> A mortgage is an interest in real property that secures a creditor's right to
> repayment.  But unless the debtor or creditor have provided otherwise, the
> creditor ordinarily is not limited to foreclosure on the mortgaged property
> should the debtor default on his obligation; rather, the creditor may in
> addition sue to establish the debtor's *in personam* liability for any
> deficiency on the debt and may enforce any judgment against the debtor's
> assets generally.  See 3 R. Powell, The Law of Real Property ¶ 467 (1990).
> A defaulting debtor can protect himself from personal liability by obtaining
> a discharge in a Chapter 7 liquidation.  See 11 U.S.C. § 727.  However,
> such a discharge extinguishes *only* "the personal liability of the debtor."  11
> U.S.C. § 524(a)(1).  Codifying the rule of Long v. Bullard, 117 U.S. 617, 6
> S. Ct. 917, 29 L. Ed. 1004 (1186), the Code provides that a creditor's right
> to foreclose on the mortgage survives or passes through the bankruptcy.

Johnson, 501 U.S. at 82-83 (emphasis in original).  Thus, "a bankruptcy discharge

extinguishes only one mode of enforcing a claim–namely an action against the debtor *in*

*personam*–while leaving intact another–namely, an action against the debtor *in rem*."  Id.

at 84; see In re Paul, 534 F.3d 1303, 1308 n.6 (10th Cir. 2008) (noting that a Chapter 7

discharge "prohibits efforts to collect a debt as a *personal liability* of the debtor . . . and

thus *in rem* rights are not affected") (internal quotation marks and citation omitted)

(emphasis in original).  Indeed, this fact was explained to Plaintiff in the Chapter 7

bankruptcy proceeding.  Filed on the docket in that case was an "Explanation of

Bankruptcy Discharge in a Chapter 7 Case," which informed Plaintiff that "a creditor may

have the right to enforce a valid lien, such as a mortgage or security interest against the

debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the

bankruptcy case.  Also, a debtor may voluntarily pay any debt that has been discharged."

[Doc. 25-5 at 2]

        "Debts which are not reaffirmed are discharged in bankruptcy if they are listed on

the bankruptcy petition."  Dvorak v. AMC Mortgage Serv., Inc., No. CV-06-5072-LRS,

2007 WL 4207220, at * 2 (E.D. Wash. November 26, 2007).  Plaintiff's home mortgage

loan was listed in his Chapter 7 bankruptcy petition and, therefore, plaintiff's personal

liability on this loan was discharged, unless it was explicitly reaffirmed.  In his

*Complaint*, Plaintiff alleges that he reaffirmed the debt by filing a "Chapter 7 Individual

Debtor's Statement of Intention," in which Plaintiff indicated that the property secured by

the mortgage would be "retained" and that he intended to "reaffirm the debt." [Doc. 25-4

at 1-2]  Wells Fargo contends that this document was insufficient as a matter of law to

reaffirm Plaintiff's home mortgage loan under 11 U.S.C. § 524(3)(c) or N.M. L.B.R.

4008-1.[4] [Doc. 25 at 6]

Section 524 governs the reaffirmation of pre-existing debts and it provides in

relevant part as follows:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if–

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

(2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;

(3) such agreement has been filed with the court and, if applicable accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that–

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of–

(I) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such

---

[4]In the Tenth Circuit a Chapter 7 debtor may retain his collateral in the mortgaged property, without reaffirming the debt or redeeming the property, if the debtor is current on his mortgage payments.  See Lowry Federal Credit Union v. West, 882 F.2d 1543, 1546-47 (10th Cir. 1989) (holding that the debtor can continue to make payments without reaffirmation or redemption and that the creditor has no grounds to recover property). This means that the mortgagor cannot foreclose on the mortgaged property simply because the debtor has discharged his personal liability on the mortgage.  Thus, the fact that Plaintiff still resides in his home and has continued to make timely mortgage payments has no bearing on the redemption issue.

claims;

(5) the provisions of subsection (d) of this section have been complied with; and

(6)     (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as–

(I) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor.

(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

(d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, 1228, or 1328 of this title, the court may hold a hearing at which the debtor shall appear in person.  At any such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted.  If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section and was not represented by an attorney during the course of negotiating such agreement, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall–

(1) inform the debtor–

(A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with subsection (c) of this section; and

(B) the legal effect and consequences of–

(I) an agreement of the kind specified in subsection (c) of this section; and

(ii) a default under such an agreement; and

(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor.

Section 524(c)-(d).

Additionally, Local Rule 4008-1 provides as follows:

Reaffirmation agreements must follow form B 240A, Reaffirmation Agreement, as revised from time to time.  All applicable parts of the agreement must be completed, and, if the reaffirmation agreement concerns

a secured debt, the security agreement must be attached.  Reaffirmation
agreements filed without the reaffirmation agreement cover sheet, Official
Form B27, may be denied without a hearing.

NM LBR 4008-1.

Plaintiff did not reaffirm his mortgage loan in accordance with Section 524(c)-(d)
and Local Rule 4008-1 and, therefore, his personal liability on the debt was discharged in
bankruptcy.  The alleged reaffirmation agreement was not filed with the Bankruptcy
Court in accordance with Section 524(c)(3) nor did the Court conduct a hearing with the
*pro se* Plaintiff as required by Section 524(d).  Furthermore, Plaintiff did not file Form B
240A (which must be signed by both the debtor and the creditor), attach a copy of the
security agreement, file Official Form B27, or the reaffirmation cover sheet as required
by Local Rule 4008-1.  Because Plaintiff failed to comply with the procedural
requirements of Sections 524(c) and (d) or Local Rule 4008-1, his attempt to reaffirm the
debt is unenforceable.  See 2 Collier on Bankruptcy Manual § 524.04, at 524-14 (4th ed.
2012) ("Subsections (c) and (d) of section 524 prohibit enforcement of the reaffirmation
of a discharged debt unless specific requirements have been met.  If an agreement to pay
a discharged or dischargeable debt does not meet the requirements of subsections (c) and
(d), it is without legal effect.").

Wells Fargo accurately and truthfully reported that Plaintiff's personal liability on
his home mortgage loan had been discharged in the Chapter 7 bankruptcy proceeding.
Although Plaintiff's *Complaint* alleges otherwise, the Court is not "required to accept as
true allegations that contradict exhibits attached to the Complaint or matters properly

18

subject to judicial notice, or allegations that are merely conclusory unwarranted deductions of fact, or unreasonable inferences." Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); see Hargrave v. Chief Asian, LLC, No. 11–5112, 2012 WL 1573632, at *2 (10th Cir. May 7, 2012) (holding that the district court properly granted the defendant's 12(b)(6) motion to dismiss because the allegations in the complaint were contradicted by an exhibit attached to the complaint) (unpublished opinion).  Because Wells Fargo did not furnish inaccurate or untruthful information to Defendant credit reporting agencies, Plaintiff's FCRA and defamation claims fail as a matter of law.  See Chiang v. Verizon New England Inc., 595 F.3d 26, 37 (1st Cir. 2010) ("The FCRA is intended to protect consumers against the compilation and dissemination of inaccurate credit information" and, therefore, to prevail on a Section 1681s–2(a) claim the Plaintiff bears the burden to prove "that the disputed information ... was, in fact, inaccurate") (internal quotation marks and citations omitted); Jaramillo v. Gonzales, 50 P.3d 554, 563 (N.M. App. 2002) (noting that "truth is a complete defense to a defamation claim").

The Court next addresses Plaintiff's conversion claim. "Conversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made."  Alcantar v. Sanchez, 257 P.3d 966, 971 (N.M. App. 2011) (internal quotation marks and citation omitted). Plaintiff's *Complaint* alleges that Wells Fargo is liable for the tort of conversion because

19

it had "NO legal right" to deduct Plaintiff's monthly mortgage payment from his checking account, in light of the discharge of his mortgage loan. [Doc. 1 at 54]  However, as previously explained, Wells Fargo retained its security interest in the mortgaged property.  See Johnson, 501 U.S. at 82-83.  Although Wells Fargo was prohibited from attempting to collect or recover any of the discharged debt from Plaintiff personally, it was not prohibited from accepting Plaintiff's voluntary payments.  See § 524(a)(2) ("A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of a process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived"); § 524(f) ("Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying a debt.").  Courts define the term voluntary "in an objective sense as referring to repayment that is free from creditor influence or inducement, regardless of whether the debtor was motivated by forces unrelated to the creditor."  DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1023 (8th Cir. 2002) (internal quotation marks and citation omitted); see also In re Paul, 534 F.3d at 1308 (noting that "a violation of § 524(a)(2) may still be found if the debtor proves the creditor acted in such a way as to coerce or harass the debtor improperly, i.e., so as to obtain payment of the discharged debt") (internal quotation marks and citations omitted).

Based on the pleadings and exhibits, the Court concludes that Plaintiff's monthly payments on his home mortgage loan were voluntary.  First, Plaintiff's *Complaint* does not allege that Wells Fargo withdrew the monthly mortgage payments without Plaintiff's

authorization or contrary to his instructions. [See Doc. 1 at 53-54]  Indeed, Plaintiff's

Quarterly Mortgage Statements, which were attached to his *Complaint*, indicate that the

mortgage payments were automatically withdrawn from Plaintiff's bank account at his

direction. [See Doc. 1-1 at 28 and 38; Doc. 1-2 at 10, 18, 30, 36-38 ("This statement is for

informational purposes only.  Our records indicate, as directed by you, your payments are

scheduled to withdraw automatically.").  The Quarterly Mortgage Statements further

indicate that Plaintiff's payments were not influenced or induced by Wells Fargo.  These

Statements provide in relevant part as follows:

> This statement is for informational purposes only and is being provided as a
> courtesy should you voluntarily decide to make your loan payments.  This
> statement should not be construed as an attempt to collect a debt or a
> demand for payment contrary to any protections you may have received
> pursuant to your bankruptcy case.  If you have received a discharge, and the
> loan was not reaffirmed in the bankruptcy case, we will only exercise our
> rights as against the property and we are not attempting any act to collect
> the discharged debt personally.

[Id.] The Statements further provide:

> Important Messages
>
> This statement is for informational  purposes only.  Our records indicate
> that your loan is subject to bankruptcy.  The attached coupon reflects the
> calendar due date, not the contractual due date of the bankruptcy case.  If
> you have any questions regarding your loan, please contact your bankruptcy
> attorney or our office.

[Id.].  In light of the foregoing, the Court concludes that Plaintiff's *Complaint* fails to

state a claim for conversion and Wells Fargo's motion to dismiss is hereby granted.

Wells Fargo contends that Plaintiff's *Complaint* "should be dismissed with

prejudice, and without leave to amend." [Doc. 25 at 12] As previously explained, "a dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." Hargrave, 2012 WL 1573632, at * 3 (quoting Brereton, 434 F.3d at 1219).  It would be futile to grant Plaintiff leave to amend his FCRA and defamation claims, because the record demonstrates that Wells Fargo reported truthful and accurate information to Defendant credit reporting agencies. See id. (affirming the district court's 12(b)(6) dismissal with prejudice because the plaintiff's complaint was "based on claims of infringement of a legal interest which clearly does not exist").  However, Plaintiff may be able to allege additional facts indicating that his monthly mortgage payments were not voluntary.  Accordingly, Plaintiff's FCRA and defamation claims are dismissed with prejudice, whereas Plaintiff's conversion claim is dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that: (1) Plaintiff's request for injunctive relief is preempted by the FCRA; (2) Plaintiff is ineligible for an award of attorney's fees under the FCRA because he is proceeding *pro se*; (3) Plaintiff's FCRA and defamation claims against Wells Fargo fail as a matter of law because Wells Fargo did not furnish inaccurate or untruthful information to Defendant credit reporting agencies; and (4) Plaintiff's *Complaint* fails to state a claim for conversion.

**IT IS THEREFORE ORDERED** that *Defendant Trans Union LLC's Motion for Partial Dismissal* [Doc. 13] is **GRANTED**;

**IT IS FURTHER ORDERED** that *Wells Fargo's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* [Doc. 25] is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's request for injunctive relief, as well as his FCRA and defamation claims against Wells Fargo, are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff's request for attorney's fees, as well as his conversion claim against Wells Fargo, are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED** this 30th day of July, 2012, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge

23