IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**NORBERT A. SCHUELLER,**

    Plaintiff,

                              vs. No. 1:11-CV-0955-MCA-LFG

**EXPERIAN INFORMATION
SOLUTIONS, INCORPORATED,
EQUIFAX INFORMATION
SERVICES, LLC, TRANS UNION,
LLC, WELLS FARGO & CO.**, *doing
business as* **WELLS FARGO BANK,
N.A.,** *doing business as* **WELLS
FARGO HOME MORTGAGE,**

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on *Defendant Wells Fargo Bank, N.A's Motion for Attorney Fees And Costs*[1], filed August 29, 2012 [Doc. 71]. Pro se Plaintiff Norbert A Schueller, who is not a licensed attorney admitted to any legal bar, *see* Doc. 74 at 5, but is a "law-trained *pro se* litigant and frequent filer of various and sundry lawsuits," in both state and federal courts[2], *see* July 30, 2012 Order Adopting Report and Recommendation at 3-4 (Doc. 69), filed a response and affidavit. *See* Docs. 74, 75. Having considered the parties' submissions, the relevant case law, and

---

[1] The Clerk of the Court has already entered an award of Defendant's costs, *see* Doc. 78. Defendant seeks an award of the expenses for computerized research if the Court considers them to be part of an attorney's fees instead of costs. *See* Doc. 72 n.1.

[2] A review of Pacer indicates that Schueller has filed and prosecuted at least 16 complaints in federal court, not including his bankruptcy filing, and that he has filed an unsuccessful appeal in six of those cases. He also has filed complaints in state court, as noted in Magistrate Judge Garcia's April 11, 2012 Report and Recommendation at 4 n.3 (Doc. 62).

otherwise being fully advised in the premises, the Court will grant Defendant's motion in part and deny it in part.

I.      **PROCEDURAL AND FACTUAL HISTORY.**

Defendant originally brought its motion for attorney fees under 28 U.S.C. § 1927.  *See* Doc. 71 at 1.  Defendant noted that § 1927

> is a natural outgrowth of the inherent authority of a court to assess costs and attorneys' fees against parties who have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1164 (10th Cir. 1985).

Doc. 71 at 4.  In the alternative, Defendant argued that,

> even if § 1927 did not apply to Mr. Schueller, a 'District Court ha[s] inherent authority to impose the identical sanction." *Institute for Motivational Living, Inc. v. Doulos Institute for Strategic Consulting, Inc.*, 110 Fed. Appx. 283, 287 (3rd Cir. 2004); *Alexander v. United States,* 121 F.3d 312, 316 (7th Cir.).  A court has inherent authority, distinct from any statutory authorization, to "deter frivolous and abusive litigation and promote justice and judicial efficiency by imposing monetary sanctions." *Doe ex rel. Hughes v. Martinez*, 674 F.Supp.2d 1282, 1285 (D.N.M. 2009); *see also Braley v. Campbell,* 832 F.2d 1504, 1510 n. 4 (10th Cir. 1987).  A sanction of attorneys' fees and costs may discourage Mr. Schueller from initiating similar abusive litigation, as he has done in the past.

*Id.* at 6.  As a third basis for awarding attorney fees, Wells Fargo cites 15 U.S.C. § 1681n(c) of the Fair Credit Reporting Act ("FCRA"), which provides that,

> upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

*See* Doc. 71 at 6 n.1 (also citing *Rogers v. Johnson-Norman*, 514 F. Supp. 2d 50, 52 (D.D.C. 2007) (collecting cases)).  Of course, Schueller has before been made aware that § 1681n(c) provides that a court shall award attorney fees for bad-faith or harassing filings in a case brought under the FCRA.

2

*See Schueller v. Citibank*, No. 03cv1238 BB/DJS Doc. 5 at 11 (Citibank's answer asserting that Schueller's FCRA claims were made "in bad faith and for the purpose of harassment so that pursuant to the provisions of 15 U.S.C. § 1681n(c) Citibank should be allowed the recovery against Plaintiff of its attorney's fees reasonable in relation to the work expended in responding to the Complaint filed by Plaintiff"). Indeed, a review of Schueller's federal complaints in this and other Districts indicates that the FCRA seems to be one of Schueller's favorite statutes on which to sue. *See id.*; *Schueller v. Quest Communications*, No. 01cv1517 MV/DJS (stipulated dismissal of FCRA claims); *Schueller v. General Electric Co.*, No. 11cv779 RHS/ACT (stipulated dismissal of FCRA claims); *see Schueller v. TRW, Inc.*, 1989 WL 155408, *2 (9th Cir. 1989) (affirming summary judgment in favor of creditor under the FCRA because there was "no evidence that Mr. Schueller suffered any injury due to defects in those procedures"), *cert. denied* No. 89-7837, 498 U.S. 842 (1990).

After Schueller contended that § 1927 is not applicable to non-attorneys, *see* Doc. 74 at 5, Defendant also argued that "the law allows this Court to assess attorneys' fees and costs if it determines that the *pro se* party's suit was frivolous, vexations, or brought to harass or embarrass the defendants." Doc. 76 at 3 (citing *Houston v. Norton*, 215 F.3d 1172, 1174 (10th Cir. 2000)). Schueller did not address the Court's inherent authority to award attorney fees as a sanction, nor did he address 15 U.S.C. § 1681n(c). Wells Fargo argues that "[t]he frivolous claims against Wells Fargo coupled with the abusive tactics Mr. Schueller engaged in throughout this litigation is sufficient to support an award of attorneys' fees." Doc. 76 at 3.

In support of its motion, Wells Fargo lists the following actions as evidence of Schueller's bad faith and vexatious and/or harassing activities justifying an attorney's fee award in its favor. First, it contends that Schueller had no reasonable basis for filing suit against it, and when Wells

3

Fargo filed its motion to dismiss, Schueller characterized the motion as "delusional and lying." Doc. 71 at 1, 3. Wells Fargo next contends that Schueller "continued to attack Wells Fargo, the Court, and counsel through harassing filings," although he has been warned against using belligerent and harassing tactics in the past." *Id.* at 1-2. As examples, Wells Fargo first lists Schueller's frivolous motion to recuse Magistrate Judge Lorenzo Garcia, which Schueller brought on the following grounds: Magistrate Judge Garcia (I) gave Schueller what Schueller interpreted as a "condescendingly reluctant greeting & sign handshake;" January 27, 2012 Order at 4; (ii) asked that "Schueller remove his briefcase from the table," *id.*; (iii) inquired whether Schueller claimed actual damages associated with his defamation claim, and upon learning there were no actual damages, referred Schueller to a controlling New Mexico Supreme Court case, which Schueller interpreted as a tactic to "intimidate him to withdraw [that] claim," *id.* at 4; and (iv) asked Schueller whether "he reaffirmed [the mortgage] debt in accord with the requirements of 11 U.S.C. § 524," which Schueller interpreted as pre-judging the substantive issues of his Complaint, *id.* at 4-5. Judge Garcia denied the motion to recuse because "no reasonable person would believe that the undersigned Magistrate's impartiality might be reasonably questioned." January 27, 2012 Order at 6.

Wells Fargo's second example is Schueller's frivolous motion for Rule 11 sanctions against Wells Fargo, in which Schueller accused Wells Fargo and its attorneys of "abus[ing] the legal process to perpetuate lies." Doc. 71 at 3. Magistrate Judge Garcia found that the motion was "premised upon his disagreement with an opponent's position," and discussed previous cases against other parties in which Schueller had frivolously and unsuccessfully sought Rule 11 sanctions. *See* April 11, 2012 Report and Recommendations at 3-7 (Doc. 62). I was the presiding judge in one of those cases, and I found it necessary to instruct Schueller "that though he is pro se, he is expected

4

to conduct this litigation without resort to gratuitous or *ad hominem* attacks on counsel or parties," and concluded that "it is likely that Plaintiff's Motion for Sanctions would be considered frivolous and sanctionable had it been filed by an attorney." *Schueller v. Farmers Ins. Group*, No. 07cv1084 MCA/RLP, Doc. 85 at 2-3 n.2, 10 (D.N.M. Sept. 26, 2009). I warned Schueller that having to address motions for sanctions like the one he had filed "needlessly consumes the resources of the parties and the Court, prolongs the litigation, and distracts focus from the substantive issues. Plaintiff now has been warned and may be subject to sanctions if he continues this conduct in the future." *Id.* at 11. Magistrate Judge Garcia cautioned Schueller that "the filing of Rule 11 motions, when done for an ulterior purpose of harassing, increasing costs, or as a trial tactic to compel a settlement, is itself a violation of Rule 11, and sanctions, including substantial monetary sanctions, can be imposed." No. 11cv955 MCA/LFG, April 11, 2012 Report and Recommendations at 7-8. In response, Schueller again personally attacked Magistrate Judge Garcia, contending that his analysis was "an irrelevant, obfuscatory diversion" that was "interposed solely for vengeful purposes in order to poison the case." Doc. 63 at 2. Finding that Schueller's objections were "nothing more than summary and unfounded accusations against the Magistrate Judge," the Court concluded that there was "no basis to reject or modify the Magistrate Judge's recommendation," and denied Schueller's motion for sanctions. July 30, 2012 Order at 2, 4-5 (Doc. 69).

      The Court dismissed Schueller's claims against Wells Fargo that same day in a separate Memorandum Opinion and Order, finding that the documentary evidence Schueller referenced in his Complaint conclusively established that "Wells Fargo accurately and truthfully reported that Plaintiff's personal liability on his home mortgage loan had been discharged in the Chapter 7 bankruptcy proceeding," thus also establishing that Schueller's "FCRA and defamation claims fail

5

as a matter of law." July 30, 2012 Memorandum Opinion and Order at 18-19 (Doc. 68). The Court also dismissed Schueller's conversion claims against the bank, holding that, under 11 U.S.C. § 524, although his personal liability on the mortgage loan was discharged, Schueller could continue making his payments to avoid foreclosure on the loan. Therefore, "Plaintiff's monthly payments on his home mortgage loan were voluntary," and Wells Fargo had not "converted" Schueller's money by accepting those voluntary payments as a matter of law. *See id.* at 19-20. Of course, Magistrate Judge Garcia had cautioned Schueller on January 12, 2012 – before the briefing period on Wells Fargo's motion to dismiss had ended – that Schueller's failure to properly reaffirm his mortgage debt under 11 U.S.C. § 524 of the bankruptcy code may be dispositive of his suit against Wells Fargo, *see* Doc. 42 at 6-8 (complaining of Magistrate Judge Garcia's comments).

## II.  ANALYSIS.

As discussed below, the Court concludes that Wells Fargo is entitled to some attorney fees under 15 U.S.C. § 1681n(c) and/or the Court's inherent power to award fees when litigants have pursued claims in bad faith or for the purposes of harassment.

### A.  Section 1927 does not apply to pro-se litigants who act as their own attorney.

Defendant states that

> [t]he 10th Circuit has not specifically addressed whether *pro se* litigants may be sanctioned under § 1927. However other courts within the Tenth Circuit, and other Circuit Courts have held that § 1927 properly applies to *pro se* litigants. *See*, *e.g.*, *Wages v. Internal Revenue Serv.*, 915 F.2d 1230, 1235-36 (9th Cir.1990); *see also Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991) ("28 U.S.C. § 1927 provide courts with the power to sanction abusive *pro se* litigants"). The plain language of the statute also supports its application to *pro se* litigants. The statute applies to "any attorney or other person admitted to conduct cases in any court." 28 U.S.C. § 1927.

Although the Court agrees that the Tenth Circuit has not yet squarely analyzed the issue, it has indicated that § 1927 does not apply to litigants. In *Hutchingson v. Pfeil*, for example, the Tenth Circuit noted that "§ 1927 and inherent authority turn on same subjective standard and the 'only meaningful difference' is 'that awards under § 1927 are made only against attorneys.'" *Hutchinson*, 208 F.3d 1180, 1187 n.9 (10th Cir. 2000) (*quoting Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir.1999)). The Tenth Circuit also noted that it previously had held in *Dreiling*, 768 F.2d at 1164-65, that "'[s]ection 1927 is a natural outgrowth of the inherent authority of a court to assess costs and attorney's fees ... against *a party* who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Hutchinson*, 208 F.3d 1180, 1187 n.9 (emphasis added). These comments indicate that the Tenth Circuit interprets § 1927 to apply only to attorneys, and not to the litigants, even if a litigant represents himself. Further, in distinguishing between attorney-fee awards under 42 U.S.C. § 1988 or Rule 41(a)(2) and those granted under § 1927, the Tenth Circuit has noted that,

> [t]here are significant differences between the three fee provisions that permit imposing a § 1927 sanction while concurrently denying a § 1988 or Rule 41(a)(2) sanction. For instance, § 1988 is not available against attorneys, whereas § 1927 is available against only attorneys, *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 208 (5th Cir.1998).

*Steinert v. Winn Group, Inc*., 440 F.3d 1214, 1222 (10th Cir. 2006). In *Maguire Oil Co.*, the Fifth Circuit stated that "Section 1927 applies to an 'attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously,' 28 U.S.C. § 1927, and is thus-by its own terms-available only against attorneys and not parties." And as early as *Braley v. Campbell*, 832 F.2d 1504 (10th Cir. 1987), the Tenth Circuit noted that § 1927 was not intended to lessen the zeal with which an attorney represents her or his

7

clients and that the "power to assess costs against an attorney under § 1927 . . . is a power that must be strictly construed and utilized only in instances evidencing a serious . . . disregard for the orderly process of justice." *Id.* at 1512 (internal quotation marks omitted). The Court will not award fees under § 1927.

**B. Defendant is not entitled to an award of attorney fees under 42 U.S.C. § 1988.**

The Court also will not award attorney fees under *Houston v. Norton* because that case deals with the courts' discretionary power under 42 U.S.C. § 1988(b) "to award a reasonable attorney's fee to a prevailing party in a civil rights action." *Houston v. Norton*, 215 F.3d at 1174. Schueller did not bring a cause of action against Wells Fargo under the civil-rights statutes.

**C. The Court will award attorney fees for bad-faith, vexatious, and/or harassing conduct under 15 U.S.C. § 1681n(c) or its inherent power.**

But the Defendants also requested an award of attorney fees using the Court's inherent powers, which is permitted by both the Tenth Circuit and the United States Supreme Court, and a pro-se litigant is not exempted from sanctions under that authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 53-54 n.16 (1991) ("[T]he imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation."); *Dreiling*, 768 F.2d at 1164-65. The Court must exercise its inherent authority "with restraint and discretion," and must use such discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44–45. "[A]n assessment of attorney's fees is undoubtedly within a court's inherent power." *Id.* As the Tenth Circuit noted in *Dreiling,* the Court's inherent authority to assess attorney fees against a party is limited to those

8

circumstances in which the party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." 768 F.2d at 1164 (internal quotation marks omitted).

In addition, the Court is obliged to award attorney fees to a defendant under 15 U.S.C. § 1681n(c): "upon a finding by the court that an unsuccessful **pleading, motion, or other paper** filed in connection with an action under this section was filed **in bad faith or for purposes of harassment**, the court **shall** award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper."

As noted above, Schueller is very experienced in bringing and litigating claims under the FCRA. But the documents on which Schueller based his FCRA, defamation, and conversion claims against Wells Fargo were entirely groundless because they clearly controverted his contention that Wells Fargo misrepresented information on his credit report about Schueller's discharge in bankruptcy or his payment history from 2005 until November 2010. As the Court has previously explained to Schueller, the fact that Wells Fargo has a security interest in the real property and, therefore, still has the right to bring an *in rem* procedure and foreclose on the property secured by the mortgage if Schueller elects to stop making the mortgage payments on the mortgage debt does not mean that Wells Fargo "lied" in reporting that the loan balance for which **Schueller** is personally responsible is zero. As Schueller has readily concedes, "a chapter 7 discharge only eliminates personal liability for a debt; a discharge in bankruptcy is not an extinguishment or cancellation or elimination of a debt." Doc. 48 at 7; Doc. 75 at 6 ("the discharge in my bankruptcy was not a distinguishment [sic] of my debt.").

The Court cannot say with complete confidence, however, that at the time he filed the Complaint, Schueller fully understood the import of the bankruptcy proceedings on Wells Fargo's

reporting requirements or on its continuing right to foreclose on its security interest should Schueller stop making payments on the mortgage loan.  Schueller represented himself in his bankruptcy proceedings.  Therefore, although the Court finds that the Complaint was frivolous, the Court does not find that Schueller filed it in bad faith, and the Court will not grant to Wells Fargo its attorney fees for responding to the suit, participating in the initial proceedings and filing the motion to dismiss either under its inherent powers to sanction or under § 1681n(c).

Once the motion to dismiss was filed, however, Schueller was fully apprised of the law, and he is very competent in researching and understanding legal principles.  Further, Magistrate Judge Garcia tried to assist Schueller in understanding that his complaint was without merit by again referring him to the controlling law at the first scheduling conference, but Schueller stubbornly, and without any legal basis for doing so, persisted in pursuing his claims in bad faith.  The Court agrees with Defendant that Schueller "had ample opportunity to dismiss his claims when it became objectively clear that they lacked merit."  Doc. 71 at 5.  The Court will grant attorney fees for Wells Fargo's efforts from that point forward in replying to Schueller's bad-faith response to the motion to dismiss under § 1681n(c) and/or its inherent power to sanction bad-faith or vexations, harassing filings.

And Schueller's subsequent motion to recuse Magistrate Judge Garcia and his motion for sanctions against Wells Fargo (which he filed after Wells Fargo refused to pay his settlement demand) were clearly vexatious and without any legal support, and were brought for the purpose of harassing Wells Fargo and denigrating the Court.  Schueller has been previously instructed on the law regarding these kinds of claims, and has been warned that, if he continued to bring such frivolous claims, he could be sanctioned – to no avail.  It appears that Schueller will not stop his

bad-faith conduct until it actually costs him something to do so.  Because the Defendant has a statutory right to an award of attorney fees for having to respond to bad faith or harassing filings under § 1681n(c), and because the Court also has the inherent authority to award attorney fees for this conduct, the Court will grant attorney fees to Wells Fargo.

Schueller contends that the Court should not sanction him because he was not acting in bad faith in filing his complaint.  *See* Doc. 75 at 6-7.  In doing so, he simply repeats the arguments that the Court has already rejected in granting the motion to dismiss.  He states that his "mistake was in believing what Wells Fargo had represented to him," and was a good-faith mistake.  *Id.*  But, as noted, Wells Fargo's representation to the credit-reporting agency that the amount on the mortgage debt that Schueller is legally liable for is zero is true and its representation to Schueller that the mortgage debt is still outstanding and it may foreclose on the house if Schueller voluntarily stops making payments on that debt is also true.  Schueller made no "mistake" in believing Wells Fargo.

Schueller also contends that the Court should not consider his "kerfuffle" with the Magistrate Judge, and that the Defendant had no business getting involved in it.  *See id.* at 8.  He is wrong on both points.  Schueller obviously makes light of his caustic attacks on the Court and opposing counsel that waste this Court's scarce judicial resources, but the Court does not.  And the Defendant has an interest in maintaining in its case a qualified, competent, unbiased magistrate judge who is familiar with the case, and it has a duty respond to any motion or the Court will deem that it consents to the granting of the motion under our local rules.

Schueller contends that the Court must consider the enormous difference in his and Wells Fargo's wealth in determining a reasonable award of attorney fees.  *See id.* at 9-10.  In doing so, he implicitly suggests that poor individuals may, without any financial consequence, cause wealthy

individuals to suffer the financial burden of defending against bad-faith, vexations, or harassing claims. In support, he cites only one case from the Fifth Circuit, in which the court jointly and severally assessed attorney's fees against the plaintiff and his counsel in the amount of $10,000 (reduced from the defendant's lodestar request of $70,212) as an award under § 1988 and § 1927 for bringing a groundless § 1983 action. The Fifth Circuit noted that "because fee awards are at bottom an equitable matter, . . . courts should not hesitate to take the relative wealth of the parties into account." *Rogers v. Kroger Co.*, 586 F. Supp. 597, 602 (5th Cir. 1984) (quoting *Faraci v. Hickey-Freeman Co., Inc.*, 607 F.2d 1025 (2d Cir.1979) (applying equitable considerations in Title VII fee-award case). The Defendant did not respond to Schueller's argument.

The Court, however, is not awarding fees under a civil-rights statute that gives the Court discretion to award fees, and § 1681n(c) requires the Court to award fees against any party who files a pleading or motion or other paper "in bad faith or for purposes of harassment." Further, in examining whether fees are appropriate against a plaintiff in civil-rights cases by analyzing "quite different equitable considerations," the United States Supreme Court stated,

> a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 419, 422 (1978) (italics in original). Thus, the "equitable considerations" appears to be the plaintiff's conduct in filing a frivolous, unreasonable, or groundless suit, not whether the plaintiff may be able to afford to pay attorney fees assesses against him.

As discussed above, the Court will not assess attorney fees against Schueller for only frivolous or ignorant conduct. The Court notes that Schueller paid the filing fee, *see* Doc. 3; is not indigent because he receives $1278/month in social security benefits and is covered by Medicare, *see* Doc. 75 at 2; and that he no longer has any debt because of his bankruptcy. Schueller has presented nothing indicating that he has no other assets or savings, and this Court takes judicial notice that in May 2012 he settled a FCRA case in this District, *see Schueller v. General Electric Co.*, No. 11cv779 RHS/ACT, Doc. 22, and that in January 2009 he settled another case, *see Schueller v. Farmers Ins. Group*, No. 07cv1084 MCA/RLP, Doc. 98. If Schueller is unable to pay an attorney-fees judgment, the Defendant may place a judgment lien against his property, in which Schueller has equity, so that Defendant may ultimately recover the amount of judgment plus interest whenever that house is sold. Thus, insofar as the Court has discretion to consider Schueller's assets in determining an appropriate attorney-fees award under its inherent authority to assess such an award, the Court will not reduce any award solely because of Schueller's financial situation.

Schueller further contends that the Court should deny Wells Fargo's alternative request that, "if this Court holds that Mr. Schueller should not be personally liable for attorneys' fees and costs due to the bankruptcy discharge, Wells Fargo's litigation fees and costs may still be added to the secured amount due and owing under the Mortgage." Doc. 71 at 10. Schueller contends that such an addition would violate public policy and his contract with Wells Fargo. *See* Doc. 74 at 10-11. The Court agrees with Wells Fargo that Schueller's discharge in bankruptcy does not preclude, or have any effect on an attorney-fee award in this case. *See Garrett v. Cook*, 652 F.3d 1249, 1255 n.4 (10th Cir. 2011) ("Post-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily pursued a whole new course of litigation, commenced litigation, or returned to

13

the fray voluntarily."). Thus, the Court finds Schueller to be personally liable for these attorney fees and there is not need to consider Wells Fargo's alternative suggestion to add these fees to the debt secured by the mortgage on Schueller's property.

### C. The lodestar calculation.

Counsel for Wells Fargo provided the Court with itemized billing records that permit the Court to engage in the calculation of a lodestar amount, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Anchondo v. Anderson, Crenshaw & Assoc.*, 616 F.3d 1098, 1102 (10th Cir. 2010). The Court should fix a reasonable hourly rate, measured by "prevailing market rates in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The party requesting attorney fees bears the burden of proving the amount of hours spent on the case and the appropriate hourly rates. *See id.* at 897.

> Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate. *See Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987) ("Absent other evidence of prevailing market rates the district court must rely on all relevant factors known to the court in establishing the reasonable rate to be applied . . . to derive the 'lodestar' figure.").

*Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir. 1998). Counsel must make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Counsel for Wells Fargo has made no efforts to inform the Court regarding the reasonable prevailing rates in New Mexico for defense attorneys who contract with a large bank or other corporation to provide services. But Schueller has not objected to the reasonableness or amount of

14

the attorney fees Wells Fargo seeks.  The Court will, therefore, rely on its own knowledge about prevailing rates that has been gained from reviewing affidavits and contracts in other cases.  The Court begins with noting that this was not a complex case, and that all of Schueller's filings were frivolous, at the least. Apart from its motion to dismiss and reply brief, all of the Defendant's counsel's work involved normal procedural activities which required no specialized skills of any kind, like working on joint-status reports and producing Rule 26 disclosures, together with responding to a run-of-the mill motion for sanctions and a motion to recuse, an 11-page stipulated motion to stay discovery, and paragraph-long stipulated notices of extension.

Defendant seeks fees of $310/hour for Larry Montaño, Defendant's New Mexico counsel who agreed to appear with Defendant's Denver, Colorado counsel and "to participate in a meaningful and substantial manner in this matter."  Doc. 4 at 1.  A review of Mr. Montaño's billing itemization shows that his activity was limited to reviewing and commenting on various pleadings and motions, conferencing with the Denver co-counsel and Mr. Schueller, and "drafting" an entry of appearance and two motions for extension of time.  *See* Doc. 73-2, Ex. B.  But Wells Fargo also seeks fees of $310/hour for Eric P. Accomazzo, a shareholder of the Denver firm who has 31-years of experience, but who did not enter an appearance in this case.  *See* Doc. 73 at 2.  A review of Mr. Accomazzo's limited itemized billing demonstrates that it is largely repetitive of Mr. Montaño's or Mr. Siler's work, *see* Doc. 73-1, and the Court will not permit Wells Fargo to recover fees for duplicated work   *See Hensley*, 461 U.S. at 434.  The Court will not permit recovery of any of Mr. Accomazzo's fees.

Defendant's attorney Jamie G. Siler is also a shareholder in the Denver firm and has been practicing law for 13 years; and his hourly rated is $275/hour.  Mr. Siler appears to have been the

15

lead attorney in this case. Ian Hicks, of the Denver firm, is Defendant's fourth attorney in this case, and he drafted most of the motions, which Mr. Siler reviewed and edited, and his work is billed at $175/hour[3]. Jon D. Paul, of the Denver firm, is Defendant's fifth attorney, and he researched and drafted the motion for attorney fees at an hourly rate of $165, with Mr. Siler reviewing and editing his work. Defendant presents no evidence regarding the specialization or skill of any attorney.

The Court has previously determined, based on affidavits from attorneys in New Mexico, that $250/hour is a reasonable rate for experienced plaintiffs' attorneys in New Mexico to charge for performing unspecialized work in relatively uncomplicated cases. *See Palm v. Bd. of Cty. Comm'rs*, No. 09cv397 MCA/LAM, Doc. 152 at 4 (D.N.M. Nov. 24, 2010); *cf. Anchondo*, 616 F.3d at 1102 (affirming $195/hour award as a reasonable "prevailing market rate" for Albuquerque plaintiffs' counsel Rob Treinen and $300 per hour reasonable for a national FDCPA class-action specialist in a "substantively straightforward but procedurally somewhat complicated litigation"). In a frivolous § 1983 action where the Court awarded attorney fees to the defendant under 42 U.S.C. § 1988, the Court noted that the "State of New Mexico . . . has billing guidelines for contract attorneys who work for Risk Management as defense attorneys . . . of $150/hour," and found that to be a reasonable fee for general defense work in New Mexico. *Bryant v. Twelfth Jud'l Dist. Court*, No. 07cv1304 MCA/KBM, Doc. 52 at 4 (D.N.M. March 26, 2010). In rejecting the higher rates counsel have charged the Defendant, the Court in no way intends to disparage the skill, experience, or reputation of counsel, or the quality of the work they have performed in this case. The Court finds that $250/hour is a reasonable fee for the type of unspecialized work performed by Mr.

---

[3] Although the affidavit states that Mr. Hicks' hours are billed at $175/hr., *see* Doc. 73 at 2, the itemized invoice indicates that he sometimes was billed out at $185/hr., *see* Doc. 73-1 at 4.

Montaño and Mr. Siler.  The Court finds that $165/hour is a reasonable fee for the work performed by associates Mr. Hicks and Mr. Paul.

The Court further finds that some of the time billed for activities is excessive.  For example, Mr. Montaño billed .30 for conferring with Mr. Hicks and "drafting" a one-paragraph notice of extension of time.  The Court will reduce that time to .10.  He billed .40 on February 22, 2012, and another .30 on March 5, 2012 to confer with Schueller and Mr. Hicks about the same stay of discovery - which appears to be duplicative.  The Court will reduce that total time to .30.  Further, the Court has not counted the time spent by any of Defendant's attorneys before December 24, 2011, the date that Mr. Montaño reviewed and commented on Schueller's December 23, 2011 response to Wells Fargo's motion to dismiss.

The Court will not award fees for Mr. Siler's April 26, 2012 entry for .20 that does not describe what he did.  Mr. Siler billed 3.2 hours for reviewing and editing, and Mr. Hicks billed 11.2 hours for researching and drafting, Wells Fargo's response to Schueller's frivolous motion for sanctions.  *See* Doc. 73-1 at 3-4.  But the response was only five pages long and did not deal with a complex matter or issue of first impression.  *See* Doc. 65.  The Court finds that the time billed for that task is unreasonable and that Mr. Siler's editing and reviewing time should be reduced to 2 hours and Mr. Hicks' research and drafting time should be reduced to 8 hours.

Similarly, Mr. Hicks spent 6.7 hours researching and drafting the 7-page **stipulated** motion for stay of discovery, which the Court finds to be unreasonable, and which the Court reduces to 4 hours.  Mr. Paul spent 15.7 hours researching and drafting the motion for attorney fees, and Mr. Siler spent 4.2 hours reviewing and editing that motion.  *See* Doc. 73-1 at 6.  The Court finds that Mr.

17

Paul's hours should be reduced to 10 and that Mr. Siler's hours should be reduced to 3.  The Court finds the remaining billing times to be reasonable.

The Court will also award $404.54 in computerized research costs and Pacer fees, *see* Doc. 72 at 1 and Doc. 72-1 at 6 (itemized fees), incurred after December 23, 2011, when Schueller filed his response to Wells Fargo's motion to dismiss instead of voluntarily dismissing his claims against it.  *See Sorbo v. United Parcel Serv*., 432 F.3d 1169, 1180 n.10 (10th Cir. 2005) ("computer research is not a separately taxable cost but "a substitute for an attorney's time that is compensable under an application for attorneys' fees") (internal quotation marks omitted); *Whalen v. Unit Rig, Inc*., 974 F.2d 1248, 1254 (10th Cir. 1992) (affirming award of computerized legal research as part of attorney-fee application).

The Court finds that, for those activities conducted **after** the filing of Schueller's response to the motion to dismiss, a reasonable attorney fee for Mr. Montaño is 3.30 hours at $250/hour, for a total of $825.00; that a reasonable attorney fee for Mr. Siler is 11.8 hours at $250/hour for a total of $2,950.00; that a reasonable attorney fee for Mr. Hicks is 26.8 hours at $165/hr. for a total of $4,422.00; and that a reasonable fee for Mr. Paul is 12.4 hours at $165/hr. for a total of $2,046.00. Wells Fargo is awarded a total of $10,647.54 in attorney's fees under § 1681n(c) and/or the Court's inherent power to award attorney fees as a sanction for Schueller's bad-faith litigation conduct.

**IT IS ORDERED** that the Defendant's *Motion for Attorney Fees and Costs* [Doc. 71] is GRANTED in part;

**IT IS FURTHER ORDERED** that the Wells Fargo is awarded attorney fees from Norbert A. Schueller in the total amount of $10,647.54.

**SO ORDERED** this 27th day of March, 2013, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
Chief United States District Judge